UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| GEORGE F. ALDRIDGE, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-55-SNLJ |
| | ) | |
| LEE BROWNING, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This matter is before the Court upon review of the third amended complaint filed by plaintiff George Aldridge, a prisoner and frequent filer of lawsuits. For the reasons explained below, this case will be dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2).

### Background

As fully set forth in prior orders of this Court, plaintiff initiated this civil action by filing a long, rambling, 69-page complaint that was prepared in a manner that obscured what plaintiff's actual claims were, and failed to give the named defendants fair notice of the claims made against them. In consideration of plaintiff's *pro se* status, the Court gave plaintiff leave to file an amended complaint. In so doing, the Court clearly explained to plaintiff the deficiencies of the complaint, and gave him clear instructions about how to prepare the amended complaint. Plaintiff filed an amended complaint, but then moved to withdraw it. He also filed a motion seeking an extension of time to file a second amended complaint. The Court granted plaintiff's motion, and plaintiff subsequently filed a second amended complaint. However, upon review, the Court noted the second amended complaint contained the same defects as the original. In consideration of plaintiff's *pro se* status, the Court granted him leave to file a third amended

complaint. After seeking and receiving an extension of time to do so, plaintiff has filed a third amended complaint, which the Court now reviews pursuant to 28 U.S.C. § 1915(e)(2).

**The Third Amended Complaint**

Plaintiff filed the third amended complaint pursuant to 42 U.S.C. § 1983 against Lee Browning (an optometrist), and Corizon Health Services. Plaintiff sues Browning in his official and individual capacity.

The third amended complaint is similar to plaintiff's earlier pleadings, in that it is unnecessarily long, rambling and repetitive. However, it is clear that plaintiff alleges as follows. Plaintiff arrived at Southeast Correctional Center ("SECC") on August 20, 2015, and submitted a medical services request ("MSR") for optometric services due to chronic eye pain from past injuries. At the time, he had in his possession a "dark lens solar shield" for indoor and outdoor use. (Docket No. 20 at 4). However, on August 26, 2015, the eyewear was confiscated, apparently by an official in plaintiff's housing unit. Plaintiff alleges he "submitted a MSR each day to be seen defendant Browning." *Id.*

Plaintiff states that he was prescribed dark lens glasses on September 15, 2015. When they arrived, he was in administrative segregation, and did not have a lay-in for them. He does not allege that Browning was responsible for this. On December 10, 2015, a nurse practitioner named Nina Hill and a corrections officer named J. May confiscated the glasses.

During a November 22, 2016 optometry appointment, Browning would not reorder replacement glasses, explaining that Hill and "the administration" would not allow plaintiff to possess them, but he told plaintiff that if he could convince Hill and the administration to approve them, he would order them. However, Browning "would not fight with the administration or with Nina Hill" over the issue. *Id.* at 8. After that appointment, Browning

complaint. After seeking and receiving an extension of time to do so, plaintiff has filed a third amended complaint, which the Court now reviews pursuant to 28 U.S.C. § 1915(e)(2).

**The Third Amended Complaint**

Plaintiff filed the third amended complaint pursuant to 42 U.S.C. § 1983 against Lee Browning (an optometrist), and Corizon Health Services. Plaintiff sues Browning in his official and individual capacity.

The third amended complaint is similar to plaintiff's earlier pleadings, in that it is unnecessarily long, rambling and repetitive. However, it is clear that plaintiff alleges as follows. Plaintiff arrived at Southeast Correctional Center ("SECC") on August 20, 2015, and submitted a medical services request ("MSR") for optometric services due to chronic eye pain from past injuries. At the time, he had in his possession a "dark lens solar shield" for indoor and outdoor use. (Docket No. 20 at 4). However, on August 26, 2015, the eyewear was confiscated, apparently by an official in plaintiff's housing unit. Plaintiff alleges he "submitted a MSR each day to be seen defendant Browning." *Id.*

Plaintiff states that he was prescribed dark lens glasses on September 15, 2015. When they arrived, he was in administrative segregation, and did not have a lay-in for them. He does not allege that Browning was responsible for this. On December 10, 2015, a nurse practitioner named Nina Hill and a corrections officer named J. May confiscated the glasses.

During a November 22, 2016 optometry appointment, Browning would not reorder replacement glasses, explaining that Hill and "the administration" would not allow plaintiff to possess them, but he told plaintiff that if he could convince Hill and the administration to approve them, he would order them. However, Browning "would not fight with the administration or with Nina Hill" over the issue. *Id.* at 8. After that appointment, Browning

issued a lay-in for plaintiff to have dark glasses to use outdoors, and he also recommended that plaintiff wear sunglasses. Browning also prescribed pain-relieving eye drops, but they caused side effects.

Plaintiff claims that indoor dark lens glasses are the only way to treat his symptoms. He claims that Browning's refusal to treat him has caused him to have difficulties reading, concentrating, thinking, interacting with others, learning, comprehending, and performing all activities of daily living. He alleges that "Defendant Browning was deliberately indifferent to my serious medical needs by refusing and failing to treat my double vision and migraine headaches pain in excess of 24 months from August 20, 2015 to December 21, 2017 that was of a quality acceptable when measured by prudent professional standards in the community." *Id.* at 5. Plaintiff also alleges that Browning "inflicted unnecessary and wanton pain" on him by refusing to provide him treatment for his double vision and migraine headaches. *Id.* He repeatedly alleges that Browning "failed to and refused to provide [him] services at a level reasonable commensurate with modern medical science and of a quality acceptable within prudent professional standards and as a level of health services that are reasonably designed to meet routine and emergency medical care . . .". *Id.* at 7.

Plaintiff repeatedly suggests that Browning provided no treatment at all. For example, he alleges that he "submitted over 300 requests for treatment of pain to Defendant Browning, and was never seen for eye pain I was suffering." *Id.* at 10. He alleges he filed "over 300 MSRs for eye pain and I have not been referred once to see the optometrist," *id*. at 14, and he alleges he was not referred to an ophthalmologist and has "never been assessed by any eye doctor." *Id.* at 16.

Plaintiff includes multiple pages of rambling and repetitive allegations against Corizon. Briefly summarized, plaintiff alleges that Corizon had a policy to do many things, including not permitting medical referrals, understaffing facilities, not offering training or monitoring for staff, failing to train Browning, intentionally delaying grievances, intentionally creating deficiencies, interfering with religious beliefs, and being deliberately indifferent to plaintiff's serious medical needs.

Plaintiff seeks equitable relief, including being provided with the glasses of his choice from the outside vendor of his choice, pain medication, a consultation with an ophthalmologist, and the appointment of a "special master" to monitor Corizon's staff. He also seeks monetary relief.

## Discussion

The Court first addresses plaintiff's allegations against Browning. To state a claim for inadequate medical care under the Eighth Amendment, a prisoner must plead facts sufficient to indicate a deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Camberos v. Branstad*, 73 F.3d 174, 175 (8th Cir. 1995). A claim of deliberate indifference involves both an objective and a subjective component. The objective component requires a plaintiff to demonstrate that he suffered an objectively serious medical need. *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011). The subjective component requires a plaintiff to demonstrate that the defendant actually knew of, but deliberately disregarded, that need. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997), *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997).

Establishing the subjective component of a deliberate indifference claim requires showing "a mental state akin to criminal recklessness." *Ryan v. Armstrong*, 850 F.3d 419, 425

4

(8th Cir. 2017) (quoting *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013)). Allegations amounting to negligence, and allegations that establish only the plaintiff's disagreement with treatment decisions, do not state claims of constitutional significance. *Id., Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

Assuming for the sake of argument that plaintiff's condition amounted to an objectively serious medical need, plaintiff's allegations do not establish that Browning was deliberately indifferent to that need. Plaintiff's allegations establish that Browning saw him for treatment on multiple occasions, but did not provide the treatment plaintiff believed was appropriate, and he also prescribed pain-relieving eye drops that caused side effects. However, he does not allege that he ever told Browning about those side effects. He also complains that Browning would not "fight" with the prison administration to give him the glasses he wanted, and he suggests he should have been sent for an ophthalmology consultation. Plaintiff's allegations establish Browning's treatment of, not his deliberate indifference to, plaintiff's conditions. While plaintiff obviously disagrees with the treatment Browning provided and believes he would receive better care elsewhere, such allegations do not state claims of constitutional significance. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008). (a "mere disagreement with treatment decisions does not rise to the level of a constitutional violation."). The gist of plaintiff's allegations is that Browning is guilty of negligence or medical malpractice, neither of which amounts to a violation of plaintiff's constitutional rights. *See Estelle*, 429 U.S at 106 (medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner."). Finally, it cannot be said that Browning violated plaintiff's federally-protected rights by refusing to "fight" with prison administration over whether plaintiff could possess his desired eyewear.

In addition, plaintiff's allegations against Browning are directly contradictory. Plaintiff alleges he "was never seen for the eye pain I was suffering," *id.* at 10, was not "referred once to see the optometrist," *id.* at 14, and had "never been assessed by any eye doctor." *Id.* at 16. However, it is obvious that Browning saw plaintiff on numerous occasions and provided treatment, including treatment for eye pain. It therefore cannot be said that Browning ever refused or delayed treatment, only that he did not give plaintiff what he wanted. As explained above, such allegations fail to state a claim of constitutional dimension.

The Court turns to plaintiff's allegations against Corizon. To state a claim against Corizon, plaintiff must allege that a policy or custom of Corizon was responsible for a constitutional violation. *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978)). As discussed above, plaintiff's allegations fall short of alleging any constitutional violation, and there can therefore be no claim against Corizon for any policies, practices or customs leading to one. Moreover, plaintiff's vague and conclusory allegations do not support any actionable claims against Corizon. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Ulrich v. Pope County,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of a *Monell* claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of the plaintiff's rights); *see also Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (to plead an actionable *Monell* claim "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.").

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that this case is **DISMISSED** without prejudice, pursuant to 28 U.S.C. § 1915(e)(2). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's motion to appoint counsel (Docket No. 8) is **DENIED** as moot.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

Dated this 8th day of November, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE